JOHN L. BURRIS, Esq./ State Bar #69888
BENJAMIN NISENBAUM, Esq./State Bar #222173
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200 Facsimile: (510) 839-3882
John.burris@johnburrislaw.com
bnisenbaum@hotmail.com; ben@johnburrislaw.com

Attorneys for Plaintiffs
TAUN HALL and MILES HALL

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAUN HALL, individually and as co-successor-in-interest to Decedent MILES HALL; SCOTT HALL, individually and as co-successor-in-interest to Decedent MILES HALL,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF WALNUT CREEK, a municipal corporation; TOM CHAPLIN , individually and in his capacity as Chief of Police for the CITY OF WALNUT CREEK; HOLLY CONNERS, individually, and in her capacity as a police officer for the CITY OF WALNUT CREEK; MATT SMITH, individually and in his capacity as a police officer for the CITY OF WALNUT CREEK; MELISSA MURPHY, individually and in her capacity as a police officer for the CITY OF WALNUT CREEK; KC HSIAO, individually and in his capacity as a police officer for the CITY OF WALNUT CREEK; TAMMY KEAGY, individually and in her capacity as a police officer for the CITY OF WALNUT CREEK; and, Walnut Creek police officers DOES 1-25, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS AND WRONGFUL DEATH.**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

On June 2, 2018, Defendants responded to a young man they knew suffered from schizoaffective disorder (a severe psychiatric disorder), who possessed a gardening tool, by shooting and killing him as he ran around and past them, never threatening the Defendants or anyone else when he was shot. Tragically, the young man's family had been working with Defendant CITY OF WALNUT CREEK Police Department in an effort to get help for their son, Decedent MILES HALL, and only called the police at the advice of Defendant TAMMY KEAGY, a mental health resource officer who they had been working with, in a joint effort to get Mr. HALL hospitalized and further evaluated for medication. Shockingly, the Defendants all had Taser ERD's on their person, and Defendant KEAGY held one in her hands, when Defendants KC HSIAO and MELISSA MURPHY shot and killed Decedent. No one attempted to use their taser, and as shown on the videos of the incident, the officers, against all legitimate police training, used tactics of escalation in confronting Mr. HALL as opposed to de-escalation, Mr. HALL was not threatening, and when Mr. HALL ran at the instigation of the threatening conduct of Defendants, he ran in a zig zagging manner around the Defendants, not at them. In fact, as shown on the video of the shooting, the two officers who fired, including one officer with only a year of experience, actually rotated clockwise to their right approximately 90 degrees to shoot Mr. HALL as he ran past them. There was no one in the area that he was running to, and Mr. HALL posed no significant threat of imminent harm to anyone when Defendants killed him.

## JURISDICTION

1. This action arises under Title 42 of the United States Code, Sections 1983 and 12132. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343. The unlawful acts and practices alleged herein occurred in the City of Walnut Creek, County of Contra Costa, California, which is within this judicial district.

## PARTIES

2. Plaintiff herein, TAUN HALL, is and was at all times herein mentioned a citizen of the United States residing in the City of Walnut Creek in California. She is the mother and Co-

Successor-in-Interest to Decedent MILES HALL, who died intestate, unmarried and without issue. Decedent MILES HALL was a qualified individual with a recognized disability pursuant to 42 United States Code, Section 12132.

3. Plaintiff herein, SCOTT HALL, is and was at all times herein mentioned a citizen of the United States residing in the City of Walnut Creek in California. He is the father and Co-Successor-in-Interest to Decedent MILES HALL, who died intestate, unmarried and without issue. Decedent MILES HALL was a qualified individual with a recognized disability pursuant to 42 United States Code, Section 12132.

3. Defendant CITY OF WALNUT CREEK ("CITY") is a municipal corporation, duly organized and existing under the laws of the State of California. Under its authority, the City operates the Walnut Creek Police Department. Defendant CITY is being sued directly under section 1983 *Monell* and under 42 U.S.C. section 12132 for violation of the Americans with Disabilities Act (ADA). Defendant CITY is also being sued under California state law with liability for the torts of its employees pursuant to *respondeat superior*.

4. At all times mentioned herein, Defendant TOM CHAPLIN ("CHAPLIN") was employed by defendant CITY as Chief of Police for the CITY. He is being sued in his official capacity as Chief of Police for the CITY. Plaintiffs contend that Defendant CHAPLIN was personally on notice of the Unconstitutional deficiencies in Defendant CITY's policies, practices and training regarding the use of force, police response to mentally impaired subjects, and the reasonable continuing use of available less-lethal alternatives that would render lethal force unreasonable, but with deliberate indifference failed to correct said Unconstitutional deficiencies.

5. At all times mentioned herein, Defendant HOLLY CONNERS ("CONNERS") was employed by Defendant CITY as a police officer. She is being sued individually and in her official capacity as a police officer for the City. Plaintiffs contend Defendant CONNERS, who was a Sergeant present at and with responsibility for the scene of the subject-incident and responsibility for supervising the conduct of other Defendant Officers at the scene of the subject-incident, was an integral participant in the subject-incident and with deliberate indifference failed to reasonably

supervise defendant officers and failed to intervene to prevent the use of unreasonable force against Decedent MILES HALL despite having the reasonable opportunity to do so, and was negligent.

6. At all times mentioned herein, Defendant TAMMY KEAGY ("KEAGY") was employed by Defendant CITY as a police officer. She is being sued individually and in her official capacity as a police officer for the City. Plaintiffs contend Defendant KEAGY, a former member of the Mental Health Evaluation Team and a then-current member of the County of Contra Costa Crisis Negotiation Team had previously coordinated police response with Plaintiffs TAUN and SCOTT HALL to Decedent MILES HALL for the purpose of conducting safe Mental Health Evaluations of Decedent MILES HALL, and that Defendant KEAGY undertook an affirmative duty by inducing Plaintiff TAUN and SCOTT HALL to rely on reasonably conduct by herself and other CITY police employees to safely respond to Decedent MILES HALL. Plaintiffs contend Defendant KEAGY was at the scene of the subject-incident, armed with a taser deployed, and did not fire her taser, either because Decedent MILES HALL was not a sufficient threat for a Taser to be fired, or because Defendants KC HSIAO and MELISSA MURPHY fired their handguns prematurely, and unreasonably, before Defendant KEAGY could fire her Taser. Plaintiffs further contend Defendant KEAGY was an integral participant in the use of Unreasonable Force against Decedent MILES HALL and failed to intervene in the use of unreasonable force by Defendants HSIAO and MURPHY and was negligent.

7. At all times mentioned herein, Defendant MATT SMITH ("SMITH") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City. Plaintiffs contend Defendant SMITH who was present at the scene of the subject-incident and fired a less-lethal bean bag shotgun at Decedent, was an integral participant in the use of unreasonable force against Decedent MILES HALL, failed to intervene in the use of unreasonable force against Decedent MILES HALL, and was negligent.

8. At all times mentioned herein, Defendant KC HSIAO ("HSIAO") was employed by Defendant CITY as a police officer. He is being sued individually and in his official capacity as a police officer for the City. Plaintiffs contend Defendant HSIAO who was present at the scene of the subject-incident and fired his lethal handgun and shot Decedent multiple times killing him, used

excessive force unrelated to a legitimate law enforcement purpose and with reckless disregard for Decedent MILES HALL's rights, was an integral participant in the use of unreasonable force against Decedent MILES HALL, failed to intervene in the use of unreasonable force against Decedent MILES HALL, and was negligent.

9. At all times mentioned herein Defendant MELISSA MURPHY ("MURPHY") was employed by Defendant CITY as a police officer. She is being sued individually and in her official capacity as a police officer for the City. Plaintiffs contend Defendant MURPHY who was present at the scene of the subject-incident and fired her lethal handgun and shot Decedent multiple times killing him, used excessive force unrelated to a legitimate law enforcement purpose and with reckless disregard for Decedent MILES HALL's rights, was an integral participant in the use of unreasonable force against Decedent MILES HALL, failed to intervene in the use of unreasonable force against Decedent MILES HALL, and was negligent.

10. Plaintiffs contend each and every Defendant Officer present at the scene, including Defendants CONNERS, KEAGY, SMITH, HSIAO, and MURPHY violated 42 U.S.C. 12132 (Americans with Disabilities Act) in failing to provide reasonable accommodations for Decedent MILES HALL's known disability when it was reasonable to provide such accommodations, no exigency existed to preclude the provision of such accommodations, and such accommodations would have resulted in either no force or much less significant than lethal force being used against Decedent MILES HALL. Defendant CITY is liable under 42 U.S.C. 12132 for its employees' violations of the Americans with Disabilities Act.

11. Plaintiff contend each and every officer at the scene was also armed with Taser ERD, a less-lethal weapon that controls subjects by delivering an electric charge that causes Neuromuscular Disruption, rendering a subject unable to physically resist an officers' efforts to control them.

11. Plaintiff is ignorant of the true names and capacities of Defendants DOES 1 through 25, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of DOES 1-25, inclusive, when they have been ascertained.

8. In engaging in the conduct described herein, Defendant police officers acted under the color of law and in the course and scope of their employment with the City. In engaging in the conduct described herein, Defendant police officers exceeded the authority vested in them as police officers under the United States and California Constitutions and as police officers employed by Defendant CITY.

9. Plaintiff is required to comply with an administrative tort claim requirement under California law. Plaintiff has complied with all such requirements: Plaintiffs served the claim on Defendant CITY on June 14, 2019. More than 45 days have passed since the service of the claim on Defendant CITY. The claim was thereby rejected by operation of law as of July 29, 2019.

STATEMENT OF FACTS

10. On June 2, 2019, near 5:00 p.m., Defendants MURPHY and HSIAO fired numerous gunshots at and killed 23 year-old, Decedent MILES HALL, as he swerved to run around them on Arlene Lane in a clear effort to run past them toward his nearby empty home on Sandra Court in Walnut Creek. In shooting Mr. HALL, said defendants, whose actions were captured on their body-cam video, actually rotated approximately 90 degrees clockwise (to their right), as Mr. HALL ran past them on their right side Mr. HALL, who was known to these and all Defendants to be suffering from psychiatric disorder (Schizoaffective Disorder), was carrying a metal gardening rod with a pointed end, and had been making delusional statements, including that he had been giving the rod by "God", and had broken a patio door window at his and his family's residence with the metal rod. Mr. HALL never made an aggressive gesture, much less with the rod, was not charging directly at Defendants, and no one could reasonably believe he was attempting to injure the Defendants or anyone else when he was shot. Prior to Mr. HALL being shot, as he ran in a swerving pattern, Defendant SMITH used his less-lethal bean bag gun against Decedent, causing Decedent to flinch, and again re-direct his swerving running, but not disabling Decedent. Shockingly, all defendants possessed Taser ERD's, and Defendant KEAGY held one in her hand, but no one employed their Taser. Instead of help, Defendant MURPHY and HSIAO sent the death of multiple gunshots each and killed Mr. HALL. The supervisor of this scene, who was present, Defendant Sgt. HOLLY CONNERS, permitted the use of lethal force when minimal force, if any, would have been

reasonable, and when Defendants all could have reasonably used Tasers if force became necessary. Defendant KEAGY arrived at the scene shortly before the shooting. Defendant KEAGY had been in direct contact with Mr. HALL's parents and had coordinated with them in effort to use this incident to effect a Welfare and Institutions Code section 5150 hold, in order for Mr. HALL to be evaluated for treatment. The strategy developed jointly by Defendant KEAGY and TAUN and SCOTT HALL, since Mr. HALL denied his own obvious mental illness, was to use an incident in which Mr. HALL began manifesting symptoms of his mental illness, including making delusional, possibly hallucinogenic statements, and exhibiting irrational conduct out of touch with reality, to get a police response to Mr. HALL in order to have a 5150 conducted, and then have Mr. HALL be detained for psychiatric evaluations and treatment. In order to detain someone against their will on a 5150, the person must present a threat of harm to oneself, others, or be unable to care for oneself, by reason of a mental disability.

11. TAUN and SCOTT HALL, in coordination with Defendant KEAGY, previously effected one such 5150 of Mr. HALL a couple of months prior to Mr. HALL's death, resulting in a psychiatric diagnosis of Schizoaffective disorder. In that prior incident, Walnut Creek police officers used a less-lethal bean-bag shotgun to gain control of Decedent as he ran toward a neighbor's pool. Even following his release from the 5150, Mr. HALL, as many people in his condition do, continued to deny his mental illness. TAUN and SCOTT HALL knew that he would need further treatment, and that he would be unwilling to get that treatment voluntarily. Working with Defendant KEAGY, they reasonably relied on her representations that Walnut Creek police officers would respond to Plaintiff when they called them again, in a manner that took into consideration his known mental impairment. Defendant KEAGY made it clear to TAUN and SCOTT HALL that when they made a call to Walnut Creek police 911 to respond to their son, they would have to inform dispatch that their son was "threatening", or the police would likely not respond to the call. When they did make the call to police 911 on the instant occasion on June 2, 2019, Defendant KEAGY personally called TAUN HALL back, and they confirmed for the purpose of effecting the 5150 that they felt threatened and that Mr. HALL could be a danger to others. Defendant KEAGY told TAUN and SCOTT HALL that she was on her way to the scene. They had left their home after Mr. HALL became more

agitated, telling his family that the gardening rod was his “staff from god” and that this was his home now and they needed to leave. TAUN and SCOTT HALL left to avoid further exacerbating the situation and made the call to 911.

12. Shortly after talking to Defendant KEAGY, Plaintiffs TAUN HALL and SCOTT HALL were called by a neighbor who reported that Mr. Hall was banging on her door and was now in the middle of the street. Mr. HALL spoke with another neighbor while in the street, who felt no threat from Mr. HALL, while Mr. HALL showed that neighbor the gardening rod and explained to him that it was his staff from god. Mr. HALL wore a red bandana over his face.

13. Defendants CONNORS, HSIAO, MURPHY, and SMITH arrived and exited their patrol cars. They were lined up spread across the street and adjacent rocky area. One of the officers had a weapon with an orange stock on the bottom of it (likely Defendant SMITH). Mr. HALL began jogging, and one of his shoes came off. Mr. HALL then stopped and took off his other shoe, which he threw onto some rocks. Mr. Hall then began running a “juking” pattern toward the officers, as if trying to get past them. At some point around this time, Defendant KEAGY arrived and approached the scene on foot, with her Taser ERD in her hand. Plaintiffs allege the only de-escalation tactics used by Defendants were giving commands to “stop,” “drop it,” and making the statement “Oh my gosh, this is ridiculous.”

14. Plaintiffs contend that each officer present possessed not only their firearms, but also less lethal weapons, including Taser ERD which are designed to stun or incapacitate a person from a distance, and are the appropriate weapon of choice in a situation like the one involving Mr. HALL.

15. Defendant fired a less-lethal bean bag shotgun while Mr. HALL ran in a zig-zag manner. The bean bag shotgun did not disable Mr. HALL. Mr. HALL continued to run to his left, which was to the right of the Defendants from their perspective. He did not run directly at them. As Mr. Hall passed the defendants, the defendants rotated approximately 90 degrees clockwise, to their right, and Defendants HSIAO (who had four years of police experience) and MURPHY (who had one year of police experience) began shooting Mr. HALL with their handguns. Mr. HALL had not taken any threatening action against any of the officers or anyone else. Approximately six gunshots were fired. Mr. HALL fell to the ground after being shot.

16. No Tasers were fired. Plaintiffs contend that at most less-lethal force was reasonable under these circumstances, and every reasonable officer would know that lethal force was unreasonable, because Mr. HALL was not actively threatening anyone and no one was in imminent risk of serious harm or death, except Mr. HALL from the Defendants. Every reasonable officer would have perceived Mr. HALL as running to get past the officers, not running at them or otherwise threatening them.

17. Police officers are required to comply with the Americans with Disabilities Act and provide reasonable accommodation to people with disabilities, including in the course of making an arrest or detention, even against an armed subject, barring some emergency reason that would make compliance impractical. In this situation, the police response was set up specifically to respond to Mr. Hall's psychiatric disability, to get him treatment for it, and to help him, not to kill him. Plaintiffs allege that the officers involved in this incident failed to reasonably accommodate Mr. Hall's known psychiatric disability, that they used lethal force against him unreasonably, and that they were negligent in their tactical response to Mr. Hall. Plaintiffs further allege that each officer who fired gunshots at Decedent acted with reckless disregard for the violation of Mr. Hall's Constitutional and Statutory rights.

18. Plaintiffs further allege that the shooting of Plaintiff was the proximate result of Defendant CITY's failure to reasonably train their police officers in the proper and reasonable use of force and in failing to provide reasonable accommodations under the Americans with Disabilities Act for Qualified Individuals when making arrests, conducting 5150s and/or using force. Plaintiffs further allege that these substantial failures reflect Defendant CITY's policies implicitly ratifying and/or authorizing the use of excessive force by its police officers and the failure to reasonably train police officers employed by Defendant CITY in compliance with the ADA in making arrests, detentions, or conducting 5150s.

19. The shooting and killing of Decedent MILES HALL described herein was brutal, malicious, and done without just provocation or cause, proximately causing Plaintiff's injuries and resulting damages.

DAMAGES

20. Plaintiffs were physically, mentally, emotionally, and financially injured and damaged as a proximate result of Decedent MILES HALL's wrongful death, including, but not limited to, the loss of decedent's familial relationships, comfort, protection, companionship, love, affection, solace, and moral support. In addition to these damages, Plaintiffs are entitled to recover for the reasonable value of funeral and burial expenses, pursuant to C.C.P. Sections 377.60 and 377.61.

21. Plaintiffs are entitled to recover wrongful death damages pursuant to C.C.P. Sections 377.60 and 377.61 and Probate Code Section 6402(b).

22. Pursuant to C.C.P. Sections 377.30, 377.32, and 377.34, plaintiffs are further entitled to recover for damages incurred by decedent before he died as the result of being assaulted and battered, for deprivation without due process of decedent's right to life, and to any penalties or punitive damages to which decedent would have been entitled to recover, had he lived. Plaintiffs are further entitled to recover for Decedent's own pain and suffering and emotional distress incurred as a consequence of Defendants' section 1983 violations, preceding Decedent's death.

23. The conduct of the defendant officers was malicious, wanton, and oppressive. Plaintiffs are therefore entitled to an award of punitive damages against said individual defendants.

24. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights, and the rights of decedent, under the law. Plaintiffs are therefore entitled to recover all attorneys' fees incurred in relation to this action pursuant to Title 42 United States Code section 1988 and under the Americans with Disabilities Act.

FIRST CAUSE OF ACTION
(42 U.S.C. Section 1983)
(Against Defendant Officers CONNORS, HSIAO, MURPHY, KEAGY, SMITH, and DOES 1-10)

25. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 24 of this Complaint.

26. In doing the acts complained of herein, Defendants CONNORS, HSIAO, MURPHY, KEAGY, SMITH, and DOES 1-10, inclusive, and/or each of them, acted under color of law to deprive Plaintiffs of certain constitutionally protected rights, including, but not limited to:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

27. Said rights are substantive guarantees under the First, Fourth, Fifth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

SECOND CAUSE OF ACTION
(42 U.S.C. section 1983)
(Against Defendants CITY, CHAPLIN and DOES 11-25)

28. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 27 of this Complaint.

29. Plaintiff is informed and believes and thereon alleges that high ranking City of Walnut Creek officials, including Chief CHAPLIN, high ranking police supervisors, DOES 11 through 25, and/or each of them, knew and/or reasonably should have known about the repeated acts of misconduct by Defendant Officers CONNORS, HSIAO, MURPHY, KEAGY, SMITH, and DOES 1-10, and/or each of them.

30. Plaintiff is further informed and believes and thereon alleges that high ranking City of Walnut Creek officials, including Chief CHAPLIN, high ranking police supervisors, DOES 11-25, and/or each of them, knew and/or reasonably should have known that their police officers, including Defendants CONNORS, HSIAO, MURPHY, KEAGY, SMITH, and DOES 1-10, were either untrained or improperly trained in the use of force in the following areas:

a. That reasonable available less lethal weapons are required to be used against subjects who do not pose an imminent threat of serious injury or harm even if one less-lethal weapon has been

used unsuccessfully, and that the initial unsuccessful use of a less-lethal weapon is not a basis to legally justify the use of lethal force where the subject continues to not present an imminent threat of serious injury or harm;

b. That where reasonable opportunities for de-escalation of potentially threatening subjects exist, including the reasonable re-deployment and/or re-location of police officers; the use of effective communication that is not confrontational, escalating, or demanding; reasonably creating time and distance to help de-escalate, to allow the use of effective communication, and to allow the continuing opportunity to use less-lethal weapons, they must be employed to defuse a potential threat in place of lethal force.

c. That the failure of a subject, especially one who is known or appears to be suffering from a mental impairment, to comply with orders while not presenting an imminent threat of serious injury or harm, does not justify the use of lethal force.

d. That subjects suffering from a known mental disability must be provided reasonable accommodations under the ADA by police officers in the course of effecting an arrest, detention or other seizure, if such accommodations are practical and reasonable under the circumstances, that would mitigate or eliminate any threat or danger to the subject as well as those posed by the subject.

31. These policy, practice and training failures were a substantial factor and moving force in the violation of Mr. HALL's rights, culminating in his shooting death on June 2, 2109 by Defendant Officers.

32. Despite having such notice, Plaintiff is informed and believes and thereon alleges that Defendants CITY, CHAPLIN and DOES 11-25, and/or each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by Walnut Creek Police Department officers.

32. Plaintiff is further informed and believes and thereon alleges that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by CONNORS, HSIAO, MURPHY, KEAGY, SMITH, and DOES 1-10, each of them, and the policy, practice and training deficiencies identified herein, Defendants CHAPLIN, DOES 11-25, and/or each of them, encouraged these officers to continue their course of misconduct, resulting in the violation of the Plaintiffs' rights as alleged herein.

33. The aforementioned acts and/or omissions and/or deliberate indifference by high ranking City of Walnut Creek officials, including, Chief CHAPLIN, high ranking City of Walnut Creek Police Department supervisors, Defendants DOES 11-25, and each of them resulted in the deprivation of Plaintiff's constitutional rights including, but not limited to, the following:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

c. The rights of Qualified Individuals, including Decedent MILES HALL, under the Americans with Disabilities Act to be provided reasonable accommodations.

34. Said rights are substantive guarantees under the Fourth, Fifth and/or Fourteenth Amendments to the United States Constitution, and under 42 U.S.C. section 12132.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

FOURTH CAUSE OF ACTION
(Violation of 42. U.S.C. section 12132)
(Against Defendant CITY OF WALNUT CREEK herein)

35. Plaintiffs hereby realleges and incorporates by reference herein paragraphs 1 through 34 of this Complaint.

56. As against Defendant CITY, Plaintiffs further allege that said defendants failed to train, supervise, and or discipline Defendants CONNORS, HSIAO, MURPHY, KEAGY, SMITH, and DOES 1-10, and/or each of them, in recognizing symptoms of disability under title II of the Americans With Disabilities Act; from excluding qualified individuals such as Decedent MILES HALL from participation in or denial of benefits of services provided by Defendant CITY, or in otherwise discriminating against such qualified individuals with symptoms of disability recognized under title II of the Americans with Disabilities act, resulting in the shooting death of Decedent MILES HALL during the course of the subject-incident and plaintiffs' resulting damages.

57. At the time Defendant Officers responded to Decedent MILES HALL, Mr. Hall was not threatening anyone, but was talking with a neighbor about his "staff from god." Defendants made no effort to determine if Mr. Hall was actually threatening anyone, holding anyone against their will, or to make significant efforts at de-escalation. Defendants were on clear notice of Mr. HALL's mental disability, both by information provided by dispatch, Mr. HALL's prior history known to the Walnut Creek Police Department, and the fact that his mental disability was obvious to anyone who observed him by looking at him and listening to him, as was the fact that Mr. Hall was not actually threatening anyone. Instead of providing the reasonable accommodations required under the ADA, such as de-escalation, defendants employed tactics of escalation, including shouting commands, pointing weapons at Mr. Hall, and threatening him. All training in de-escalation tactics against a person suffering from a disability like schizoaffective disorder dictates that such escalation tactics are counter-productive and should be expected to escalate the situation, and potentially cause the person with the mental disability to misperceive the situation as a threat, and cause the person to run or even potentially attack officers (Plaintiffs contend the video shows Mr. Hall did not attack officers, but ran around them to run past them) instead of comply with police orders. Defendants did not observe

Decedent attack or threaten anyone, were aware of Plaintiff's disability and the symptoms and manifestations of Plaintiff's recognized disability, and shot him as he ran around and past them (even turning to their right, clockwise, 90 degrees, to shoot Mr. Hall), and failed to use further reasonable less lethal alternative beyond the bean bag shotgun, such as tasers. The aforementioned conduct of Defendant Officers excluded Plaintiff from participation in, denied Plaintiff the benefits of Defendant CITY OF WALNUT CREEK's programs and activities, and/or discriminated against Decedent MILES HALL.

58. The exclusion, denial of benefits, and/or discrimination against Plaintiff was by reason of Plaintiff's recognized disability.

59. WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

FIFTH CAUSE OF ACTION
(14th Amendment Substantive Due Process- Right to Familial Relationship)
(Against Defendants CONNORS, HSIAO, MURPHY, SMITH, and DOES 1-10)

60. Plaintiffs realleges and incorporates by reference herein paragraphs 1 through 59 of this Complaint.

61. Defendants CONNORS, HSIAO, MURPHY, SMITH, and DOES 1-10, acting under color of law, and without due process of law deprived Plaintiffs of their right to a familial relationship with Decedent by use of unreasonable, unjustified deadly force and violence, causing injuries which resulted in decedent's death, all without provocation, in violation of the Fourteenth Amendment to the United States Constitution. Defendants CONNORS, HSIAO, MURPHY, SMITH, and DOES 1-10 acted with an intent to harm Decedent unrelated to legitimate law enforcement purposes in killing Decedent.

63. As a proximate result of defendants' conduct, Plaintiffs suffered damages as hereinafter set forth.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

SIXTH CAUSE OF ACTION
(Assault and Battery)
(Plaintiffs as Co-Successors-in-Interest to Decedent MILES HALL, against Defendants CONNORS, HSIAO, MURPHY, SMITH, and DOES 1-10)

64. Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 63 of this Complaint.

65. Defendants CONNORS, HSIAO, MURPHY, SMITH, and DOES 1-10, inclusive, placed Mr. Hall in immediate fear of death and severe bodily harm by attacking and battering him without any just provocation or cause.

66. These defendants' conduct was neither privileged nor justified under statute or common law.

67. As a proximate result of defendants' conduct, Plaintiffs suffered damages as hereinafter set forth.

WHEREFORE, Plaintiffs prays for relief as hereinafter set forth.

SEVENTH CAUSE OF ACTION
(Violation of Civil Code Section 52.1)
(Plaintiffs as Co-Successors-in-Interest to Decedent MILES HALL against Defendants CONNORS, HSIAO, MURPHY, SMITH, and DOES 1-10)

68. Plaintiffs reallege and incorporates by reference herein paragraphs 1 through 67 of this Complaint.

69. The conduct of Defendants CONNORS, HSIAO, MURPHY, SMITH, and DOES 1-10, inclusive, as described herein, acting in the course and scope of their employment for Defendant CITY, violated California Civil Code Section 52.1, in that they interfered with Decedent MILES HALL's exercise and enjoyment of his civil rights, through use of wrongful and excessive force, and failure to make any proper or reasonable arrest of said Plaintiff, all accomplished through force, threats, intimidation, and coercion.

70. As a direct and proximate result of Defendants' violation of Civil Code Section 52.1, Mr. Hall suffered violation of his constitutional and statutory rights, and suffered damages as set forth herein.

71. Since this conduct occurred in the course and scope of their employment, Defendant CITY is therefore liable to Plaintiffs pursuant to respondeat superior.

72. Plaintiffs are entitled to injunctive relief and an award of their reasonable attorney's fees pursuant to Civil Code Section 52.1(h).

WHEREFORE, Plaintiffs pray for relief, as hereinafter set forth.

EIGHTH CAUSE OF ACTION
(Negligence)
(Against Defendants CONNORS, HSIAO, MURPHY, KEAGY, SMITH, and DOES 1-10)

73. Plaintiffs reallege and incorporates by reference herein paragraphs 1 through 72 of this complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by defendants, and any and all allegations requesting punitive damages.

74. At all times herein mentioned, Defendants CONNORS, HSIAO, MURPHY, KEAGY, SMITH, and DOES 1-10, inclusive, were subject to a duty of care to avoid causing unnecessary physical harm and distress to persons through their use of force and making of arrests, and to act reasonably in their pre-shooting tactics and when shooting their guns or otherwise using force. The wrongful conduct of Defendants, as set forth herein, did not comply with the standard of care to be exercised by reasonable persons, proximately causing plaintiff to suffer injuries and damages as set forth herein. Pursuant to Government Code Section 815.2(a), Defendant CITY is vicariously liable to Plaintiff for her injuries and damages suffered as alleged herein, incurred as a proximate result of the aforementioned wrongful conduct of Defendants.

74. As a proximate result of Defendants' negligent conduct, Plaintiff suffered severe physical injury, severe emotional and mental distress, injury having a traumatic effect on Plaintiff's emotional tranquility, and suffered damages.

NINTH CAUSE OF ACTION
(Wrongful Death)
(Against all Defendants)

75. Plaintiffs TAUN HALL and SCOTT HALL and incorporate by reference herein paragraphs 1 through 74 of this complaint.

76. The wrongful conduct of Defendants, as set forth herein, did not comply with the standard of care to be exercised by reasonable persons and was a battery, proximately causing plaintiffs and plaintiff's decedent to suffer injuries and damages as set forth herein. Pursuant to Government Code Section 815.2(a), Defendant CITY is vicariously liable to said Plaintiffs for injuries and damages suffered as alleged herein, incurred as a proximate result of the aforementioned wrongful conduct of Defendants.

77. As a proximate result of Defendants' conduct as set forth herein, Plaintiffs suffered severe physical injury, severe emotional and mental distress, injury having a traumatic effect on Plaintiffs' emotional tranquility, loss of care, comfort, society, familial support, financial support, and damages. Plaintiffs are entitled to recover wrongful death damages.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

JURY DEMAND

78. Plaintiffs hereby demand a jury trial in this action.

PRAYER

WHEREFORE, Plaintiff prays for relief, as follows:

1. For general damages in a sum according to proof;
2. For special damages in a sum according to proof;
3. For punitive damages in a sum according to proof;

4. For injunctive relief enjoining Defendant CITY OF WALNUT CREEK;
5. For violation of California Civil Code Sections 52 and 52.1, statutory damages, and reasonable attorney's fees;
6. For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988 and 29 U.S.C. Section 794a;
7. For the costs of suit herein incurred; and
8. For such other and further relief as the Court deems just and proper.

Dated: September 11, 2019

**LAW OFFICES OF JOHN L. BURRIS**

/s/ JOHN L. BURRIS
John L. Burris, Esq.
Benjamin Nisenbaum, Esq.
Attorney for Plaintiffs TAUN HALL and MILES HALL