1  JOHN L. BURRIS, Esq./ State Bar #69888
   BENJAMIN NISENBAUM, Esq./State Bar #222173
2  LAW OFFICES OF JOHN L. BURRIS
   Airport Corporate Centre
3  7677 Oakport Street, Suite 1120
   Oakland, California 94621
4  Telephone: (510) 839-5200      Facsimile: (510) 839-3882

5  Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAUN HALL, individually and as co-successor-in-interest to Decedent MILES HALL; SCOTT HALL, individually and as co-successor-in-interest to Decedent MILES HALL,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>CITY OF WALNUT CREEK, a municipal corporation; TOM CHAPLIN, individually and in his capacity as Chief of Police for the CITY OF WALNUT CREEK; HOLLY CONNERS, individually, and in her capacity as a police officer for the CITY OF WALNUT CREEK; MATT SMITH, individually and in her capacity as a police officer for the CITY OF WALNUT CREEK; MELISSA MURPHY, individually and in her capacity as a police officer for the CITY OF WALNUT CREEK; KC HSIAO, individually and in his officer capacity as a police officer for the CITY OF WALNUT CREEK; TAMMY KEAGY, individually and in her capacity as a police officer for the CITY OF WALNUT CREEK; and, Walnut Creek police officers DOES 1-25, inclusive,<br><br>　　　　　Defendants.<br>　　　　　　　　　　　　　　　/ | Case No. 3:19-CV-05716 WHA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS MOTION TO DISMISS PORTIONS OF PLAINTFFS' FIRST-AMENDED COMPLAINT UNDER RULE 12(B)(6)**<br><br>Date: January 23, 2020<br>Time: 8:00 a.m.<br>Courtroom 12, 19th Floor<br><br>Hon. William H. Alsup |

**TABLE OF CONTENTS**

TABLE OF CONTENTS………………………………………………………………………..2

TABLE OF AUTHORITIES………………………………………………………………….3

I. INTRODUCTION……………………………………………………………………….4

II. STATEMENT OF FACTS……………………………………………………………….6

III. ARGUMENT……………………………………………………………………………9

    A. Legal Standards……………………………………………………………………...9

    B. The FAC makes claims with specific factual contentions…………………………9

    C. Plaintiffs' *Monell* claims……………………………………………………………..11

    D. Plaintiffs' "Bare and Insufficient" ADA claim is anything but that……………….12

    E. The assault and battery claims against Defendants CONNORS and KEAGY……13

    F. The Wrongful Death Cause of Action is Based on Both Battery and Negligence...13

    G. Plaintiffs Have Shown a Strong Basis for Injunctive Relief………………………14

IV. CONCLUSION…………………………………………………………………………..15

PLAINTIFFS' OPPOSITION TO DEFENDANTS MOTION TO DISMISS PORTIONS OF PLAINTIFFS' FIRST-AMENDED COMPLAINT UNDER RULE 12(B)(6)
*Hall v. City of Walnut Creek*

2

# TABLE OF AUTHORITIES

**Cases:**

*A.C., et al., v. Griego, et al.,* No. 2:16-cv-00746, 2016 WL 5930592, at *3 (E.D. Cal. 2016) ……12

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ……………………………………………………..8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) …………………………………….8

*Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) …………………………..10

*Daniels–Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) …………………….8

*Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005) ………………………………………..8

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) …………………9

*Estate of Duran v. Chavez*, No. 2:14-cv-02048, 2015 WL 8011685, at *9 (E.D. Cal. 2015) …….12

*Felarca v. Birgeneau*, 891 F.3d 809, 819–20 (9th Cir. 2018) ………………………………….10

*Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998) ……………………………….12

*Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011) ……………………………....11

*LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir. 1985) ………………………………………14

*Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991) ……………………………….10

*Phillips v. Cty. of Fresno*, No. 1:13-cv-0538, 2013 WL 6243278, at *10 (E.D. Cal. 2013) …….11, 12

*Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1142 (N.D. Cal. 2000)……………...14

*Sheehan v. City & County of SF.*, 743 F.3d 1211 (9th Cir. 2014)………………………...……11

*Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) …………………………………………...10

*Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018) ………………………......11

*Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) ……………………………10

**Statutes:**
*Federal*

Federal Rule of Civil Procedure 8(a)(2) ………………………………………………………..8

Federal Rule of Civil Procedure 12(b)(6) ……………………………………………………..8,14

42 U.S.C. Section 12132………………………………………………………………………..8

42 U.S.C. Section 1983…………………………………………………………………… 4, 5, 14

*State*

California Civil Code Section 52.1……………………………………………………….……14

PLAINTIFFS' OPPOSITION TO DEFENDANTS MOTION TO DISMISS PORTIONS OF PLAINTIFFS' FIRST-AMENDED COMPLAINT UNDER RULE 12(B)(6)
*Hall v. City of Walnut Creek*

3

## 1. INTRODUCTION

On June 2, 2019, Defendants responded to a young man they knew suffered from schizoaffective disorder (a severe psychiatric disorder), who possessed a gardening tool, by shooting and killing him as he ran around and past them, never threatening the Defendants or anyone else when he was shot. Tragically, the young man's family had been working with Defendant CITY OF WALNUT CREEK Police Department in an effort to get help for their son, Decedent MILES HALL, and only called the police at the advice of Defendant TAMMY KEAGY, a mental health resource officer who they had been working with, in a joint effort to get Mr. HALL hospitalized and further evaluated for medication. Shockingly, the Defendants all had Taser ERD's on their person, and Defendant KEAGY held one in her hands, when Defendants KC HSIAO and MELISSA MURPHY shot and killed Decedent. None of the officers attempted to use their taser, and as shown on the videos of the incident, the officers, against all legitimate police training, used tactics of escalation in confronting Mr. HALL as opposed to de-escalation, as Mr. HALL was not threatening, and when Mr. HALL ran at the instigation of the threatening conduct of Defendants, he ran in a zig zagging manner around the Defendants, not at them. In fact, as shown on the video of the shooting, the two officers who fired, including one officer with only a year of experience, actually rotated clockwise to their right approximately 90 degrees to shoot Mr. HALL as he ran past them. There was no one in the area that he was running to, and Mr. HALL posed no significant threat of imminent harm to anyone when Defendants killed him.

Plaintiffs are Mr. HALL's parents. Mr. HALL was unmarried and had no children when Defendants killed him. The death certificate, a required filing with the successor-in-interest declarations defendants, was issued on December 12, 2019, and is attached to the successor-in-interest declarations filed concomitantly with the instant opposition.

Defendants are sued in their official capacities for purposes of Plaintiffs' state law claims for *respondeat superior* liability, as opposed to their section 1983 claims. With respect to Defendant CHAPLIN, Plaintiffs seek leave to amend the Complaint to state a *Monell* claim against him in his individual capacity, as alleged in Plaintiffs First-Amended Complaint at paragraph 4.

Defendants Connors and Keagy are integral participants in the use of force against Mr. HALL, both for purposes of Plaintiffs' federal section 1983 claims and state law negligence claims. They are proper defendants as the First-Amended Complaint is pled.

Plaintiffs' *Monell* claims are pled with sufficient specificity and properly show how Defendant CITY and CHAPLIN's policies, training, and practice were deficient as to appropriately responding to mentally-impaired subjects and not using obviously reasonable available less-lethal alternatives to shooting and killing subjects, like Mr. HALL. These are not boilerplate assertions, but highly specific allegations that establish a specific causal connection between such departures from reasonable policy, training, and/or practice and the unreasonable shooting and killing of Mr. HALL. In sum, according to the First Amended Complaint, while one less lethal option was utilized and failed, other obviously reasonable and available less lethal alternatives, including using tasers and the ability to redeploy and use reasonable containment and de-escalation tactics, were ignored, even though Defendants all knew that Mr. HALL was a mentally impaired person whose actions were the product of a known psychiatric disability. Plaintiffs' ADA claims are supported on the same basis. Defendants all knew that Mr. HALL was suffering from a severe disability, and they had the tools available to respond to it appropriately. The Defendants intentionally used lethal force instead of those other tools which are designed to reduce the threat of harm by the subject and by the officers without killing them. The intentional use of lethal force under these circumstances was an intentional deprivation of Mr. HALL's rights under the ADA.

As pled, Plaintiffs' wrongful death claim is premised on two different causes-of-action, battery, and negligence. While these could be combined into a single cause of action, it is set forth as-is so Defendants and the Court are clear that the wrongful death claim arises both from negligence and from battery (the 8th and 6th causes of action, respectively).

Defendants contend that the substance of the communications by Plaintiffs' family members and others to dispatch are somehow relevant to this motion to dismiss, but nowhere do Plaintiffs allege (and it seems implausible), that Defendants were privy to those communications. Instead, the information Defendants had about those communications would be the information dispatch related to them.

To the extent that the Court requires Plaintiffs to amend the Complaint to redress any deficiencies, Plaintiffs requests such leave.

## V.  STATEMENT OF FACTS

On June 2, 2019, Defendants KC HSIAO and MELISSA MURPHY shot and killed Decedent MILES HALL, a 23 year-old-man who, as Defendants had been informed, was in the midst of major psychiatric crisis[1]. Plaintiffs, TAUN HALL and SCOTT HALL, had been working with the Walnut Creek Police Department, specifically with a mental health resource officer, Defendant TAMMY KEAGY, to both ensure reasonable police responses to their son when he suffered an episode caused by his psychiatric disorder, and to try to get their son 5150'd so he could be treated and evaluated for psychiatric medication. Plaintiff TAUN HALL called 911 to report that her son was threatening, that he was suffering from a psychiatric crisis, and had several calls with Defendant KEAGY, to ensure that Mr. HALL could be safely taken into custody, 5150'd and properly treated. Defendant KEAGY assured Plaintiff TAUN HALL that she would make sure the responding officers knew that information and would respond to Mr. HALL safely.

As pled in the complaint, Plaintiff was carrying a gardening tool that was long metal rod. When police arrived, he was talking to a neighbor, telling the neighbor that the rod was his "staff from god".

Defendants CONNORS, HSIAO, MURPHY, and SMITH arrived and exited their patrol cars. Mr. HALL began jogging, and one of his shoes came off. Mr. HALL then stopped and took off his other shoe, which he threw onto some rocks. Mr. HALL then began running a "juking" pattern toward the officers, as if trying to get past them. At some point around this time, Defendant KEAGY arrived and approached the scene on foot, with her Taser ERD in her hand. Plaintiffs allege the only

---

[1] Since the filing of the First Amended Complaint, a coroner's inquest was held in which some of the Defendant Officers testified. As testified to at that hearing, Defendant CONNORS, the Sergeant who supervised this incident at the scene, indicated to another officer, Defendant MURPHY, that she should have her taser out to be prepared to use it. However, Defendant CONNORS testified that her communication to unholster the taser consisted of a physical gesture. Defendant MURPHY testified she did not notice or pick up on this gesture and did not understand that she was supposed to deploy her taser. Thus, no officer at the scene had a taser out to be used. To the extent the Court finds necessary, Plaintiffs could further amend the Complaint to include these material facts.

PLAINTIFFS' OPPOSITION TO DEFENDANTS MOTION TO DISMISS PORTIONS OF PLAINTIFFS' FIRST-AMENDED COMPLAINT UNDER RULE 12(B)(6)
*Hall v. City of Walnut Creek*

6

de-escalation tactics used by Defendants were giving commands to "stop", "drop it", and making the statement "Oh my gosh, this is ridiculous."

Each officer present possessed not only their firearms, but also less lethal weapons, including Taser ERD which are designed to stun or incapacitate a person from a distance, and are the appropriate weapon of choice in a situation like the one involving Mr. HALL.

Defendant SMITH fired a less-lethal bean bag shotgun while Mr. HALL ran in a zig-zag manner. The bean bag shotgun did not disable Mr. HALL. Mr. HALL continued to run to his left, which was to the right of the Defendants from their perspective. He did not run directly at them. As Mr. Hall passed the defendants, the defendants rotated approximately 90 degrees clockwise, to their right, and Defendants HSIAO (who had four years of police experience) and MURPHY(who had one year of police experience) began shooting Mr. HALL with their handguns. Mr. HALL had not taken any threatening action against any of the officers or anyone else. Approximately six gunshots were fired. Mr. HALL fell to the ground after being shot and died from the gunshots wounds.

According to the First-Amended Complaint, at most less-lethal force was reasonable under these circumstances, and every reasonable officer would know that lethal force was unreasonable, because Mr. HALL was not actively threatening anyone and no one was in imminent risk of serious harm or death, except Mr. HALL from the Defendants. Every reasonable officer would have perceived Mr. HALL as running to get past the officers, not running at them or otherwise threatening them.

The First-Amended Complaint also accurately stated that police officers are required to comply with the Americans with Disabilities Act and provide reasonable accommodation to people with disabilities, including in the course of making an arrest or detention, even against an armed subject, barring some emergency reason that would make compliance impractical. In this situation, the police response was set up specifically to respond to Mr. Hall's psychiatric disability, to get him treatment for it, and to help him, not to kill him. All defendants involved in this incident failed to reasonably accommodate Mr. Hall's known psychiatric disability, used lethal force against him unreasonably, and were negligent in their tactical response to Mr. Hall. Plaintiffs further alleged that

each officer who fired gunshots at Decedent acted with reckless disregard for the violation of Mr. Hall's Constitutional and Statutory rights.

The First-Amended Complaint also alleged that the shooting of Plaintiff was the proximate result of Defendants CITY's and CHAPLIN's failure to reasonably train their police officers in the proper and reasonable use of force and in failing to provide reasonable accommodations under the Americans with Disabilities Act for Qualified Individuals when making arrests, conducting 5150s and/or using force. Plaintiffs further alleged that these substantial failures reflect Defendant CITY's policies implicitly ratifying and/or authorizing the use of excessive force by its police officers and the failure to reasonably train police officers employed by Defendant CITY in compliance with the ADA in making arrests, detentions, or conducting 5150s.

Plaintiffs contended that each and every Defendant Officer present at the scene, including Defendants CONNERS, KEAGY, SMITH, HSIAO, and MURPHY, violated 42 U.S.C. 12132 (Americans with Disabilities Act) by failing to provide reasonable accommodations for Decedent MILES HALL's known disability when it was reasonable to provide such accommodations, no exigency existed to preclude the provision of such accommodations, and such accommodations would have resulted in either no force or much less significant than lethal force being used against Decedent MILES HALL. Defendant CITY is liable under 42 U.S.C. 12132 for its employees' violations of the Americans with Disabilities Act.

Plaintiffs contended that each and every officer at the scene was also armed with Taser ERD, a less-lethal weapon that controls subjects by delivering an electric charge that causes Neuromuscular Disruption, rendering a subject unable to physically resist an officers' efforts to control them, that these were reasonable to use under the instant circumstances, and would not have killed Mr. HALL, unlike the guns that were actually used.

As described in the First-Amended Complaint, Defendant CHAPLIN was personally on notice of these policy, practice and training failures, and did nothing to rectify them.

## III. ARGUMENT

### A. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); see Fed.R.Civ.P. 12(b)(6). "A claim has facial plausibility," and thus survives a motion to dismiss, "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a Rule 12(b)(6) motion to dismiss, the court accepts all material facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, the court need not accept conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact or unreasonable inferences. *Daniels–Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear...the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### B. The FAC makes claims with specific factual contentions.

Defendants assert that Plaintiffs have merely asserted labels and conclusions, and a formulaic recitation of the elements of a cause of action. There is nothing conclusory, formulaic or even just boilerplate about Plaintiffs First Amended Complaint. It is not a legal conclusion to assert: 1) that the Defendants all had Tasers, and none used them; 2) that the Defendants knew Mr. HALL was suffering from a psychiatric crisis; and 3) that the Defendants were required to use their Tasers and utilize de-escalation tactics. Defendants failed to provide reasonable these accommodations[2].

---

[2] While Defendants claim that Plaintiffs do not state what those accommodations should have been, in fact Plaintiffs set them forth in paragraph 57, which is in the ADA cause of action: Instead of lethal force, de-escalation tactics and the taser, among others, were required to have been used.

PLAINTIFFS' OPPOSITION TO DEFENDANTS MOTION TO DISMISS PORTIONS OF PLAINTIFFS' FIRST-AMENDED COMPLAINT UNDER RULE 12(B)(6)
*Hall v. City of Walnut Creek*

9

Plaintiffs stated in the First Amended Complaint that the Department failed to train Defendants, and to require by policy and practice, that Defendants: utilize reasonable less lethal alternatives like their Tasers when reasonable to do so, as in this instance, and to use de-escalation tactics especially when responding to mentally impaired or disabled subjects when reasonable to do so, as in this instance.

With respect to Defendants CONNORS and KEAGY, Defendants know full well that they are liable as integral participants in the subject-incident. Defendant CONNORS supervised the scene, and Defendant KEAGY was supposed to be communicating information to the Defendants at the scene but did not. Her communications would have further dispelled the notion that Mr. HALL was intentionally threatening anyone, would have further informed Defendants that this was a psychiatric emergency, likely would have caused Defendants to more seriously consider using the taser, and probably would have saved Mr. HALL's life. Defendant KEAGY was in fact running up to the scene with her taser in hand when the shots were fired[3].

Defendant CONNORS was the scene supervisor. "An official may be liable as a supervisor only if either (1) he or she was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists between the supervisor's wrongful conduct and the constitutional violation." *Felarca v. Birgeneau*, 891 F.3d 809, 819–20 (9th Cir. 2018) (internal quotation marks omitted); see also, *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991) (noting that whether a supervisor in his individual capacity is liable for a failure to supervise "hinges upon his participation in the deprivation of constitutional rights"). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). If a subordinate has committed a constitutional violation, the liability of a supervisor "depends upon whether he set in

---

[3] Defendants will surely claim that a Taser is not the appropriate weapon for a person who is armed with a long metal pry bar and is running at them, which is not appropriate for the instant-motion. As alleged, Mr. HALL never ran at Defendants, he ran around them, and it is just hard to comprehend the failure to use the Taser, since Mr. HALL had not injured anyone, should have been disabled by Tasers a safe distance from the defendants if disabling force was required, was known to be in psychiatric crisis, and the entire point of the exercise was to take him safely into custody. Certainly, Defendant KEAGY was aware that he had a metal pry bar, and she had her taser out. Tragically, the shooting happened as she arrived on foot with the Taser.

motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) (internal quotation marks omitted) (quoting *Watkins*, 145 F.3d at 1093).

Defendant CONNORS had an obligation to ensure compliance with the ADA by the scene officers, that reasonable de-escalation tactics, including redeployment, were used, and that if force became necessary, it would be reasonable force. In this case, that meant ensuring that officers had tasers deployed to use. It makes no sense that Tasers in this situation would remain in their holsters, where they are patently ineffective. Anticipating Defendants' claims that they simply had no time to do this, it only takes a moment, and every officer had the time to take their guns out. Obviously, the tasers should have been out, at least for some officers.  There was no indication that Mr. HALL had actually harmed anyone or was armed with anything other than his "staff from god" which was not harmful at a distance, and every indication that there were enough officers on scene to surround or contain Mr. HALL without shooting him with live bullets from a gun.  Instead, Defendants ignored the clearly appropriate less lethal weapons in their holsters: the Taser. Defendant CONNORS' obligation, as supervisor, was to make sure the right available equipment was used.  Defendant CONNORS has essentially undisputed liability.

**C.     Plaintiffs' *Monell* claims.**

Defendant CHAPLIN as Chief of Defendant CITY OF WALNUT CREEK Police Chief personally signs off on all decisions to and not to discipline or retrain Defendant City police officers, particularly in response to deadly force situations. Plaintiffs have alleged facts that demonstrate with specificity that Defendants CITY's and CHAPLIN's training, policies and practices did not require their police officers: 1) to use reasonable available less lethal alternatives  to lethal force, such as Tasers  (*Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011)); 2) to provide reasonable accommodations to qualified individuals under the ADA when using force or making arrests (*Sheehan v. City & County of SF.*, 743 F.3d 1211 (9th Cir. 2014), *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018); and  3) to use reasonable de-escalation tactics *Vos v. City of Newport Beach*, *Id at* 1037.

"Allegations based on 'information and belief' may be sufficient to establish a 'causal connection between the existing or non-existing policies, procedures and practices and the harms [Plaintiffs] experienced" when "the facts that might demonstrate the causal connection—such as...corrective actions taken or not taken—are not available to the pleading party [before] discovery.'" *A.C., et al., v. Griego, et al.,* No. 2:16-cv-00746, 2016 WL 5930592, at *3 (E.D. Cal. 2016) citing *Phillips v. Cty. of Fresno*, No. 1:13-cv-0538, 2013 WL 6243278, at *10 (E.D. Cal. 2013) (internal citations and quotation marks omitted). This is especially true, when a plaintiff raises failure to discipline or failure to train claims. *Id*. citing, *Estate of Duran v. Chavez*, No. 2:14-cv-02048, 2015 WL 8011685, at *9 (E.D. Cal. 2015) (allowing plaintiffs' failure to supervise, investigate, or discipline claim survive defendants' motion to dismiss); *Phillips*, 2013 WL 6243278 at *10 ("find[ing] that dismissal of plaintiffs' claims for entity/supervisor liability is inappropriate at this stage of the proceeding").

The First Amended Complaint pleads a clear causal connection between the deficient training, policies and practices and the violation of Mr. HALL's rights.  The law on these issues is not new, all police departments are required to follow it, and facially at least Defendant CITY and CHAPLIN failed to follow it in the three critical areas of training, policy and procedure: use of less-lethal alternatives, making reasonable accommodations to qualified individuals under the ADA, and to use reasonable de-escalation tactics. Whether these defendants were deliberately indifferent to these failures is a matter of proof, not of pleading.

Defendants argument on this point must fail as well.

**D.      Plaintiffs' "Bare and Insufficient" ADA claim is anything but that.**

Defendants do not argue that the ADA does not apply to police use of force or making arrests. Instead, Defendants argue that Plaintiffs cannot demonstrate the requisite deliberate indifference to satisfy the discrimination component of Title II of the ADA.  Citing *Sheehan v. City and County of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), Defendants accurately state that "Discrimination includes a failure to reasonably accommodate a person's disability." Defendants further note that to satisfy the deliberate indifference standard, Plaintiffs must show "both 'some form of notice... and the

PLAINTIFFS' OPPOSITION TO DEFENDANTS MOTION TO DISMISS PORTIONS OF PLAINTIFFS' FIRST-AMENDED COMPLAINT UNDER RULE 12(B)(6)
*Hall v. City of Walnut Creek*

12

opportunity to conform to [statutory] dictates.'" (citing *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998)).

Defendants conduct plainly meets the deliberate indifference standard. All Defendants had notice that Mr. HALL was in a psychiatric crisis caused by a psychiatric disability, and Defendants acted intentionally in not using the reasonable de-escalation tactics and less-intrusive alternatives after the bean bag gun failed. All defendants possessed a Taser, and none used one. A law enforcement strategy of "comply or die" is about as intentionally indifferent to Mr. HALL's psychiatric crisis as could be possible, especially when Mr. HALL was running past or around the Defendants, not directly at them.

The only Defendant to unholster a taser was Defendant KEAGY as she arrived. However, Defendant KEAGY failed to communicate with the officers at the scene, and as the mental health resource specialist with whom Plaintiffs were in communication, she knew even better than the Defendants at the scene the severity of the psychiatric crisis Mr. HALL was in, that he had not hurt anyone, and that she was working with Plaintiffs to get Mr. HALL 5150'd to be evaluated and treated. Her failure to communicate this information to the Defendants at the scene when she was on clear notice proves deliberate indifference, provided she acted intentionally in not communicating to the Defendants at the scene. Again, that is a matter of proof, not pleading.

**E.     The assault and battery claims against Defendants CONNORS and KEAGY.**

Plaintiff do not oppose dismissal assault and battery claims against Defendants CONNORS and KEAGY.

**F.     The Wrongful Death Cause of Action is Based on Both Battery and Negligence.**

Plaintiffs pled both a negligence and a battery cause of action. In addition, Plaintiffs pled a wrongful death cause of action, based on both the battery cause of action and on the Negligence cause of action. Plaintiffs seek leave of the Court to Amend the Complaint to set forth a Battery-Wrongful Death cause of action and a separate Negligence-Wrongful Death cause of action, as opposed to a separate cause of action for Wrongful Death alone.

## G. Plaintiffs Have Shown a Strong Basis for Injunctive Relief.

Defendants argument is based solely on the mistaken belief that Plaintiff is seeking a preliminary injunction. This is not the case. Plaintiff seeks an equitable remedy in addition to monetary damage.

Plaintiffs adequately allege Constitutionally-deficient training, practices and policies in the areas of police failing to use reasonable less-intrusive alternatives to lethal force, failure to provide reasonable accommodations under the ADA, and failing to reasonably use de-escalation tactics, and killing people like Mr. HALL with woefully inadequate justification. Plaintiffs seek injunctive relief to bring those policies, practices and training into compliance with the law, under both section 1983 and California Civil Code section 52.1.

Many courts have recognized that allegations of a policy and practice of constitutional violations demonstrate a real and immediate threat of future injury sufficient to survive a Rule 12(b) motion. See e.g., *Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1142 (N.D. Cal. 2000) (involving a pattern and practice of racial profiling). Plaintiffs must show that they: (1) suffered harm constituting an actual injury, and (2) demonstrate a realistic threat of repetition. To show that such an injury is likely to recur Plaintiffs may demonstrate that the harm is part of a "patterns of officially sanctioned…behavior, violative of the plaintiff ['s federal rights]." *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir. 1985). Indeed, in addition to Mr. HALL, plaintiffs are the parents of a daughter somewhat younger than her brother. The threat of repetition unfortunately exists.

At the very least, Plaintiffs should be allowed to further develop the record before the Court eliminates injunctive relief as a potential remedy. *Rodriguez, supra,* 89 F.Supp.2d at 1142 ("Plaintiffs are entitled to discovery to attempt to establish an evidentiary basis for their claims for injunctive relief.").

///
///
///

## CONCLUSION

Given the foregoing, Defendants' Motion to Dismiss must be denied, except for the naming of Defendant CHAPLIN in his individual capacity, which Plaintiffs should be permitted to amend. In the alternative, Plaintiffs seek leave of the Court to further amend the Complaint to include any inadvertently omitted references, to correct any inartful verbiage, and otherwise remedy any other pleading deficiencies this Court ascribes.

Respectfully submitted,

Dated: January 2, 2019  **The Law Offices of John L. Burris**

/s/ *Benjamin Nisenbaum*
Benjamin Nisenbaum
Attorneys for Plaintiffs