United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAUN HALL, individually and as co-successor-in-interest to Decedent MILES HALL; SCOTT HALL, individually and as co-successor-in-interest to Decedent MILES HALL,<br><br>  Plaintiffs,<br><br>  v.<br><br>CITY OF WALNUT CREEK, a municipal corporation; TOM CHAPLIN, individually and in his capacity as Chief of Police for the CITY OF WALNUT CREEK; HOLLY CONNERS, individually and in her capacity as a police officer for the CITY OF WALNUT CREEK; MATT SMITH, individually, and in his capacity as a police officer for the CITY OF WALNUT CREEK; MELISSA MURPHY, individually and in her capacity as a police officer for the CITY OF WALNUT CREEK; KC HSIAO, individually and in his capacity as a police officer for the CITY OF WALNUT CREEK; TAMMY KEAGY, individually and in her capacity as a police officer for the CITY OF WALNUT CREEK; and, Walnut Creek police officers DOES 1–25, inclusive,<br><br>  Defendants. | No. C 19-05716 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

**INTRODUCTION**

In this Section 1983 action, all defendants move to dismiss the complaint pursuant to Rule 12(b)(6). For the following reasons, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Taking the facts in the light most favorable to the plaintiffs, this action stems from a shooting on June 2, 2019, around 5:00 p.m. outside the home of Scott and Taun Hall in Walnut Creek. Walnut Creek Police Officers K.C. Hsiao and Melissa Murphy shot and killed their son, Miles Hall (Compl. ¶¶ 10, 15).

In a prior incident, Miles had received a diagnosis of schizoaffective disorder. Officer Tammy Keagy then told the parents that if and when they called the police for help in the next incident, the police officers would respond in a manner that considered Miles' mental illness (Compl. ¶ 11). The diagnosis occurred when Officer Keagy, in coordination with the parents, effectuated Section 5150 of California's Welfare and Institutions Code hold on Miles for mental assessment, a Section 5150 hold on Miles during which Walnut Creek officers used a bean-bag shotgun to gain control of him.

During the fatal encounter on June 2, 2019, Miles held a gardening rod he called his "staff from god." He told his parents their home had become his and that they needed to leave. So, they left and called 911. Officer Keagy returned their call, confirming their purpose to effectuate another Section 5150 hold. They felt threatened, they said, and said Miles could be a danger to others. Officer Keagy stated she was on her way. A neighbor called the parents and reported that Miles banged on the neighbor's door, then went to the middle of the street, with a red bandana on his face. Miles showed another neighbor the gardening rod and again called it his staff from god (Compl. ¶¶ 11-12).

At this point, Sergeant Holly Conners and Officers Matt Smith, Hsiao, and Murphy arrived. All served as Walnut Creek Police Officers under the supervision of Tom Chaplin, Chief of Police. After their arrival, Miles began jogging. When one of his shoes came off, he took off the other shoe and threw it into some rocks. Around this time, Officer Keagy arrived and approached on foot with a taser in hand. Unspecified officers commanded Miles to "stop" and "drop it." He ran in the officers' direction, prompting one of the officers to shoot Miles with a bean bag shotgun. This did not disable Miles, and he continued to run past the officers.

As Miles passed the officers, Officers Hsiao and Murphy then began shooting Miles with their handguns. They fired six shots. Miles fell and died shortly thereafter (Compl. ¶¶ 12-15, 19).

Although all the officers had tasers, only Officer Keagy had one in hand, but she did not deploy it. Following the shooting, the parents filed this action alleging eight claims for relief. All defendants now move to dismiss.

**ANALYSIS**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The district court accepts as true well-pled factual allegations in the complaint and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008).

**1.  SECTION 1983 CLAIMS AGAINST SERGEANT CONNERS AND OFFICER KEAGY.**

**A.  Integral Participation.**

A police officer need not be the sole party responsible for a constitutional violation before liability may attach. *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019). An officer's liability under Section 1983 can be predicated on his or her integral participation in the alleged violation. *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (internal citations omitted). Integral participation does not require that each officer's individual actions rise to the level of a constitutional violation but requires "participation in some meaningful way" in the conduct that allegedly caused the violation. *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). A theory of integral participation thus, comports with general tort principles of causation applicable to a Section 1983 action. Government officials, like other defendants, are generally responsible for the "natural" or "reasonably foreseeable" consequences of their actions. An officer can be held liable where he

3

or she is just one participant in a sequence of events that gives rise to a constitutional violation. *Nicholson*, 935 F.3d at 691-92 (internal quotations and citations omitted).

Thus, our complaint must plead facts making it plausible that Sergeant Conners and Officer Keagy had some fundamental involvement in the use of force against Miles. It alleges Officer Keagy responded to the 911 call, arrived at the scene, and approached on foot with her taser in hand (Compl. ¶ 13). The complaint further alleges that Sergeant Conners responded to the 911 call, arrived on the scene, and exited her patrol car to line up across the street with Officers Hsiao, Murphy, and Smith (Compl. ¶ 13). From the face of the complaint, both officers arrived at the scene and engaged in the incident leading up to the shooting. Only Sergeant Conners, however, had some meaningful participation in the use of force against Miles because Sergeant Conners supervised the officers conduct during the incident in addition to her physical presence at the scene. Officer Keagy calling the parents confirming the purpose to effectuate a Section 5150 hold and having her taser drawn remains insufficient participation in the use of force against Miles. Thus, the motion to dismiss the integral participation claim against Officer Keagy is **GRANTED**. The motion to dismiss the integral participation claim against Sergeant Conners is **DENIED**.

### B. Failure to Intervene.

Our court of appeals imposes a duty on police officers to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen. Officers, however, are liable only if they had an opportunity to intercede. If a violation happens so quickly that an officer had no "realistic opportunity" to intercede, then the officer is not liable for failing to intercede. *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000) (internal citations omitted).

Thus, our complaint must plead facts that Sergeant Conners and Officer Keagy plausibly had a realistic opportunity to intercede. It alleges Officer Keagy responded to the 911 call, arrived at the scene, and approached on foot with her taser in hand (Compl. ¶ 13). The complaint also alleges Sergeant Conners responded to the 911 call, arrived on the scene, and exited her patrol car to line up across the street with Officers Hsiao, Murphy, and Smith

4

(Compl. ¶ 13). It further alleges unspecified officers commanded Miles to "stop," and "drop it" (Compl. ¶ 13). Lastly, the complaint alleges the officers used a bean bag shotgun prior to the use of firearms (Compl. ¶ 14). The use of bean bags appears to have been good police practice. So, the issue is whether our complaint pleads facts making it plausible that Sergeant Conners and Officer Keagy had a realistic opportunity to prevent Officers Hsaio and Murphy from shooting Miles. While these facts from the face of the complaint make it possible or conceivable that Sergeant Conners and Officer Keagy had a realistic opportunity to intervene before the fatal shooting and failed to do so, the complaint fails to make it plausible. Here, our complaint pleads facts merely consistent with defendants' liability and stopped "short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft*, 556 U.S. at 678. Thus, defendants' motion to dismiss the failure to intervene claims against Sergeant Conners and Officer Keagy is **GRANTED**.

2. *MONELL* **CLAIM AGAINST CITY OF WALNUT CREEK.**

Section 1983 provides a "mechanism for vindicating federal statutory or constitutional rights." *Stillwell v. City of Williams*, 831 F.3d 1234, 1240 (9th Cir. 2016). Municipalities are only held liable for Section 1983 violations in narrow circumstances. A local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents. *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 694 (1978). Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983. *Ibid.* Our court of appeals has identified three viable theories for municipal liability under Section 1983:

> First, a local government may be held liable when implementation of its official policies or established customs inflicts the constitutional injury. . . Second, under certain circumstances, a local government may be held liable under Section 1983 for acts of "omission," when such omissions amount to the local government's own official policy. . . Third, a local government may be held liable under Section 1983 when the individual who committed the constitutional tort was an official with final policymaking authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.

5

*Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010).

Under the first theory, Walnut Creek could be found liable if there was an official policy or custom behind the violation. The complaint must specify what the official policy is. If there is a custom, then the complaint must refer to a custom that is "so persistent and widespread that it constitutes a permanent and well settled . . . policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (internal quotations and citations omitted). The complaint must also "demonstrate that the custom or policy was adhered with 'deliberate indifference' to [their] constitutional rights." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016).

Our complaint fails to reach the heightened deliberate indifference standard because it fails to reference any official policies or specify a widespread custom. It merely alleges that Police Chief Chaplin "knew and/or reasonably should have known about the repeated acts of misconduct" by Sergeant Conners, Officers Hsiao, Murphy, Keagy, Smith, and Does 1–10 without stating the policy or widespread custom (Compl. ¶ 29). The complaint alleges that Walnut Creek, Chaplin, and Does 11–25 "tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by Walnut Creek Police Department [O]fficers;" however, the complaint fails to state the continuing pattern and practice of misconduct (Compl. ¶ 32).

Under the second theory, Walnut Creek could be found liable if its omission, a failure to adequately train its deputies, amounts to "deliberate indifference to a constitutional right." *Clouthier*, 591 F.3d at 1249. To satisfy the deliberate indifference standard, the need for training must be "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

Our complaint fails to satisfy the heightened deliberate indifference standard when pleading under the second theory for lack of training. The complaint alleges that Sergeant Conners, and Officers Hsiao, Keagy, and Smith were untrained or improperly trained in the use of less than lethal force and de-escalation tactics (Compl. ¶ 30a-30b). It, however, fails to

6

allege any facts establishing that the lack of training was so obvious that the policymaker could be reasonably said to have been deliberately indifferent.

Under the third theory, Walnut Creek could be found liable if an official with final policymaking authority made the violation or ratified it. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Identification of those officials whose decisions represent the local government's official policy is a legal question to be resolved by the trial judge *before* the case is submitted to the jury. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (emphasis in original) (internal citations and quotations omitted). "Authority to make municipal policy may be . . . delegated by an official who possesses such authority" *Praprotnik*, 485 U.S. at 124 (internal citations and quotations omitted). Our court of appeals refused to hold that the Los Angeles chief of police delegated final policymaking authority to rank-and-file police officers. *Trevino*, 99 F.3d at 920.

*Trevino* found the city was not liable where police officers who shot the decedent were not "officials with final policymaking authority" and were not ordered to shoot by the police chief, the City Council, or anyone else possessing final policymaking authority. *Ibid.* Our complaint fails to allege Chief Chaplin, the City Council, or anyone else possessing final policymaking authority delegated that authority to any of the officers present during the shooting. Thus, Walnut Creek cannot be liable because a final policymaking official delegated authority.

Walnut Creek could still be liable under the third theory, however, by ratification. To show ratification, a plaintiff must establish that the "authorized policymakers approve[d] a subordinate's decision and the basis for it." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). "[I]t is well settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." *Id.* at 1239. To hold cities liable under Section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into Section 1983. *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 781 (9th Cir. 1997).

7

Our complaint fails to allege ratification of the shooting because it (1) does not allege any prior notice to an official policymaker of a risk of harm to Miles, (2) does not allege anyone of policymaking authority was present during the shooting, and (3) does not allege that Chief Chaplin knew the officers unconstitutional use of force before it occurred and approved it. The complaint alleges, rather, that Chief Chaplin knew or should have known about the repeated acts of misconduct (Compl. ¶ 29).

Thus, the motion to dismiss the Section 1983 claim against Walnut Creek is **GRANTED**.

### A. Injunctive Relief Against Walnut Creek.

Walnut Creek argues that the complaint insufficiently pleads injunctive relief. To seek injunctive relief in federal court, a plaintiff must satisfy the case or controversy requirement of Article III by showing he or she "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (internal citations omitted). "The equitable remedy is unavailable absent a show of *irreparable injury*, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again" *Id.* at 111 (emphasis added) (internal citations omitted).

Our complaint states "injunctive relief enjoining Defendant CITY OF WALNUT CREEK" (Dkt. No. at 19). It does not plead sufficient facts to make irreparable injury plausible. Thus, the motion to dismiss the equitable remedy of injunctive relief is **GRANTED**.

### 3. ADA CLAIM AGAINST WALNUT CREEK.

The complaint alleges Walnut Creek violated Miles' rights under the Americans with Disabilities Act by failing to train the officers in recognizing symptoms of disability under Title II of the ADA, failing to employ de-escalation tactics, and failing to use tasers. Defendants move to dismiss this claim.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any

such entity." 42 U.S.C. § 12132. To state a claim of disability discrimination under Title II, "the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Sheehan v. City and County of San Francisco*, 743 F.3d 1211, 1232 (2014), *rev'd in part on other grounds*, *City and County of San Francisco v. Sheehan*, 575 U.S. 600 (2015). "Discrimination includes a failure to reasonably accommodate a person's disability." *Id.* at 1231.

Our complaint alleges de-escalation training for persons with disabilities dictates that "escalation tactics are counter-productive and should be expected to escalate the situation, and cause the person with the mental disability to misperceive the situation as a threat, and cause the person to run or even potentially attack officers" (Compl. ¶ 57). The complaint also alleges Walnut Creek did not provide any reasonable accommodations such as de-escalation (*Ibid.*). The complaint alleges under its *Monell* claim that de-escalation includes re-deployment or re-location of police officers, nonconfrontational, non-escalating, and non-demanding communication, and the use of less-lethal weapons (Compl. ¶ 30b). It fails, however, to allege that Miles' disability caused the exclusion, denial of benefits, or discrimination.

Moreover, the complaint must plead additional facts to support its claim for monetary relief under the ADA. "To recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on part of the defendant." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). Intentional discrimination can be met by showing "deliberate indifference," which requires "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *Id.* at 1138-39. "When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the

9

deliberate indifference test." *Id.* at 1139. "To meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent[ ] and involves an element of deliberateness." *Ibid.*

Our complaint alleges that after Miles' schizoaffective disorder diagnosis plaintiffs alerted Walnut Creek police of his diagnosis through conversations with Officer Keagy and on the date of the incident through dispatch. Thus, the complaint pleads sufficient facts to make notice plausible. The complaint, however, fails to allege facts making deliberate indifference more than merely possible. It alleges Walnut Creek failed to train, supervise, or discipline officers in de-escalation tactics and that defendant officers failed to follow proper de-escalation tactics against a person suffering from schizoaffective disorder (Compl. ¶ 57). The *Duvall* court explicitly requires conduct that is "more than negligent," involving an "element of deliberateness." 260 F.3d at 1139. The complaint fails to do so here. Given the factual allegations in plaintiffs' opposition, however, leave to amend would not be futile. Moving forward, plaintiffs must plead their best case. Thus, the motion to dismiss the ADA claim against Walnut Creek is **GRANTED.**

### 4. ASSAULT AND BATTERY CLAIMS AGAINST ALL OFFICERS BUT KEAGY.

The complaint alleges liability for Sergeant Conners, Officers Hsiao, Murphy, Smith, and Does 1-10 for assaulting and battering Miles. Defendants move to dismiss the assault and battery claims against Sergeant Conners and Officer Keagy, even though the complaint does not allege these claims against Officer Keagy. Since plaintiffs do not oppose dismissal of these claims against Sergeant Conners, the motion to dismiss the claims of assault and battery against Sergeant Conners is **GRANTED**.

### 5. DUPLICATIVE NEGLIGENCE ISSUE.

The complaint alleges claims for wrongful death against all defendants based on negligence and battery. The complaint sues defendants directly and Walnut Creek under Government Code Section 815.2(a). Defendants move to dismiss either the wrongful death claim based on negligence or the separate negligence claim as duplicative of one another (Dkt. No. 18 at 17).

Our complaint alleges both negligence and wrongful death based on negligence. This order agrees with the defendants that it is enough to allege wrongful death based on negligence and that the separate negligence claim is merely duplicative. *See Estate of Hatfield v. County of Lake*, 2012 WL 1949327 (N.D. Cal. May 29, 2012) (Judge Phyllis Hamilton) (medical negligence duplicative of wrongful death based on medical negligence); *Zion v. County of Orange*, 2014 WL 12798107 (C.D. Cal. Nov. 17, 2014) (Judge James Selna) (negligence duplicative of wrongful death based on negligence); *Herrera v. Los Angeles Unified School District*, 2019 WL 1581413 (C.D. Cal. Feb. 13, 2019) (Judge James Selna) (negligent supervision duplicative of wrongful death) *A.C. v. Griego*, 2016 WL 5930592 (E.D. Cal. Oct. 12, 2016) (Judge John Mendez) (plaintiffs withdrew negligence as duplicative of wrongful death). Thus, the motion to dismiss the negligence claim is **Granted**.

### 6. OFFICERS' IMMUNITY ISSUE.

The complaint alleges claims against Chief Chaplin, Sergeant Conners, and Officers Keagy, Smith, Hsiao, and Murphy in their official capacity as police officers for Walnut Creek. Defendants assert immunity for each officer from Section 1983 allegations in their official capacity.

Immunity from Section 1983 claims only extends to state officials. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). In *Monell*, the United States Supreme Court held that a municipality is a person under Section 1983 and, therefore, can be held liable. 436 U.S. at 2035. *Monell* liability is limited to "local government units which are not considered part of the State for Eleventh Amendment purposes." *Will*, 491 U.S. at 70.

Defendants' assertion that all the Walnut Creek officers receive immunity is misguided. The officers are not state officers, rather officers of the local municipality, Walnut Creek. Thus, the motion to dismiss Section 1983 claims against all the officers in their official capacity is **DENIED**.

\*          \*          \*

Defendants also argue plaintiffs lack standing. Where there is no personal representative for the estate, the decedent's "successor in interest" may prosecute the survival action if the

11

successor in interest satisfies the requirements of Section 377.32 of the California Code of Civil Procedure. *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1093 n.2 (9th Cir. 2006). Plaintiffs have shown they can meet this procedural requirement in their opposition. Plaintiffs shall fix this in their amended complaint.

## CONCLUSION

The integral participation claim against Officer Keagy is **DISMISSED**. The claims for failure to intervene against Sergeant Conners and Officer Keagy are **DISMISSED.** The claims for assault, and battery against Sergeant Conners are **DISMISSED**. The *Monell* and ADA claims against Walnut Creek are **DISMISSED**. The equitable remedy of injunctive relief against Walnut Creek is **DISMISSED**. The negligence claims against Sergeant Conners, and Officers Hsiao, Murphy, Keagy, and Smith are **DISMISSED**.

This motion is based on the operative complaint. By **FEBRUARY 24, 2019**, **AT NOON,** plaintiff may seek leave to amend dismissed claims by a motion noticed on the normal 35-day calendar. Plaintiffs must plead their best case. Their motion should affirmatively demonstrate how the proposed amended complaint corrects the deficiencies identified in this order, as well as any other deficiencies raised in the defendants' motion but not addressed herein. The motion should be accompanied by a redlined copy of the amended complaint.

**IT IS SO ORDERED.**

Dated: January 24, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE